UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TANESIA M. H.,[1]<br><br>       Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>       Defendant. | Case No. 2:23-cv-00551-MAR<br><br>MEMORANDUM AND ORDER |

  Plaintiff Tanesia M. H. ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her applications for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

  For the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** for further proceedings consistent with this Order.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

## PROCEDURAL HISTORY

On November 7, 2018, Plaintiff filed applications to receive DIB and SSI under Titles II and XVI of the Social Security Act. Administrative Record ("AR") at 212–14. After the Agency denied her applications, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR at 115–16, 169. On August 9, 2020, an ALJ held a hearing where both Plaintiff and a vocational expert testified. Id. at 31–64. The ALJ issued an unfavorable decision on October 29, 2020, which the Appeals Council affirmed on March 5, 2021. Id. at 1–3, 12–25.

Plaintiff filed a Complaint in district court on April 9, 2021, seeking judicial review of the Commissioner's decision. Id. at 782. On August 27, 2021, the parties stipulated to voluntary remand of the case for further administrative proceedings and a new hearing and decision. Id. at 784–89. On January 22, 2022, the Appeals Council remanded the case to an ALJ who heard Plaintiff's testimony on November 1, 2022. Id. at 750–73, 774–78. On November 23, 2022, the ALJ issued an unfavorable decision, prompting Plaintiff to seek judicial review of the decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Id. at 725–42; ECF Docket No. ("Dkt.") 12 at 2.

# II.

## PLAINTIFF'S BACKGROUND

Plaintiff was forty-three (43) years old on the alleged disability onset date and forty-nine (49) at the time of the administrative hearing.[2] AR at 740. Plaintiff has a GED and a work history as a home attendant. Id. at 262, 740, 757. She alleges disability based on her various physical and psychological limitations: depression, PTSD, bipolar disorder, paranoid schizophrenia, insomnia, anxiety, memory loss, and high blood pressure. Id. at 268.

---

[2] Under Agency regulations, Plaintiff was considered a "younger person" on the alleged onset and hearing dates. See Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1069 (9th Cir. 2010) (explaining that social security regulations define "younger persons" as "those persons under age 50").

### III.

### STANDARD FOR EVALUATING DISABILITY

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity for a continuous period of at least twelve (12) months. 42 U.S.C. § 423 (d)(1)(a); Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work she previously performed and any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. Ford v. Saul, 950 F.3d 1141, 1148–49 (9th Cir. 2020); 20 C.F.R. § 404.1520. The steps are outlined below:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[3]

(4) Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

---

[3] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity (RFC), an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

1    (5) Is the claimant able to do any other work?  If not, the claimant is found

2          disabled.  If so, the claimant is found not disabled.

3    See Tackett, 180 F.3d at 1098–99; see also 20 C.F.R. § 404.1520(b)–(g)(1); Bustamante

4    v. Massanari, 262 F.3d 949, 953–54 (9th Cir. 2001).

5          The claimant has the burden of proof at steps one through four, and the

6    Commissioner has the burden of proof at step five.  Ford, 950 F.3d at 1148;

7    Bustamante, 262 F.3d at 953–54.  If a claimant meets her burden at step four by

8    establishing an inability to perform past work, the Commissioner must show that the

9    claimant can perform other work available in "significant numbers" in the national

10   economy, accounting for the claimant's residual functional capacity ("RFC"), age,

11   education, and work experience.  20 C.F.R. § 404.1520(g)(1); Tackett, 180 F.3d at

12   1098–99, 1100; Reddick, 157 F.3d at 721.  The ALJ has an affirmative duty to assist

13   the claimant in developing the record at every step of the inquiry.  Bustamante, 262

14   F.3d at 954.

15                              **IV.**

16                    **THE ALJ'S DECISION**

17   **A.     STEP ONE**

18         The ALJ found Plaintiff had not "engaged in substantial gainful activity since

19   June 30, 2017, the alleged onset date."  AR at 732.

20   **B.     STEP TWO**

21         The ALJ found Plaintiff has "the following severe impairments: history of

22   gunshot wounds with nerve damage; major depressive disorder; anxiety disorder with

23   OCD; PTSD; bipolar disorder."  AR at 732.

24   **C.     STEP THREE**

25         The ALJ found that Plaintiff does not "have an impairment or combination of

26   impairments that meets or medically equals the severity of one of the listed

27   impairments in 20 CFR Part 404, Subpart P, Appendix 1."  AR at 733.

28

**D.     RFC DETERMINATION**

The ALJ found Plaintiff had the RFC to perform light work[4] with the following exceptions:

> The claimant needs an opportunity to change positions as often as every 30 minutes for 1-2 minutes. The claimant is precluded from all climbing of ladders, ropes, and scaffolds. The claimant can perform other postural activities occasionally. She is precluded from all exposure to dangerous work hazards. The claimant is limited to routine, simple tasks, work not requiring a fast assembly quote pace . . . and is limited to having no more than occasional required work interactions with coworkers and supervisors. The claimant is precluded from all work with public contact. Finally, the claimant will be off task 3% of the workday due to momentary symptom distractions.

AR at 734.

**E.     STEP FOUR**

The ALJ found Plaintiff was unable to perform past relevant work as a home attendant, as defined by the Dictionary of Occupational Titles ("DOT").  AR at 740.

**F.     STEP FIVE**

The ALJ found that "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  AR at 741.  With the assistance of the vocational expert's testimony, the ALJ found that Plaintiff could perform the following unskilled, light-work jobs:  (1) router (DOT No. 222.587-038) and (2) routing clerk (DOT No. 222.687-022).  Id.  Accordingly, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act ["SSA"] from June 20, 2017, through the date of this decision."  Id. at 742.

---

[4]  See 20 CFR 404.1567(b) and 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls . . .  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

## V.

## **PLAINTIFF'S CLAIMS**

Plaintiff presents two (2) issues for review:  (1) whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's subjective testimony; (2) whether the ALJ's evaluation of Plaintiff's symptom testimony violated the law of the case and the rule of mandate doctrines.  Dkt. 12 at 2.  Fundamentally, both claims involve the ALJ's alleged failure to properly consider Plaintiff's symptom testimony and are therefore subject to the same general legal principles.  Accordingly, the Court addresses the issues together as a single claim—whether the ALJ properly considered Plaintiff's testimony regarding her symptoms and resulting limitations.

## VI.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record. Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion.  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  It is more than a scintilla but less than a preponderance.  Lingenfelter, 504 F.3d at 1035. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) ("[A] reviewing court . . . may not affirm simply by isolating a 'specific quantum of supporting evidence' " (quoting Robbins, 466 F.3d at 882)).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not

substitute its judgment" for that of the Commissioner.  Reddick, 157 F.3d at 720–21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

The reviewing court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  If the ALJ erred, the error may be found harmless only if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted).

# VII.

## DISCUSSION

## A.    THE ALJ FAILED TO PROVIDE SUFFICIENT REASONS FOR REJECTING PLAINTIFF'S SUBJECTIVE COMPLAINTS

### 1.    Relevant facts

#### a.    Plaintiff's subjective complaints

During her hearings before an ALJ on August 9, 2020 and November 1, 2022, Plaintiff testified about the ongoing physical and mental impairments she has been dealing with since 2013, after she lost a child and was shot just outside her home.  AR at 42, 759.  Plaintiff is still symptomatic from three (3) gunshot wounds in the buttock, right leg, and left foot, with one bullet still lodged in her right thigh.  Id. Plaintiff has a pinched nerve from the bullet, causing frequent pain, limpness, and discomfort when walking more than fifteen (15) minutes or sitting for extensive periods.  Id. at 759–61.  Accordingly, Plaintiff walks using a cane.  Id.  Plaintiff also has chronic migraine headaches.  Id. at 51, 761–62.

Plaintiff has a history of mental impairment; she was briefly hospitalized at a mental facility at seventeen (17) years old.  AR at 48.  Plaintiff testified about her

heightened mental health challenges since 2013, including suicidal ideation, hallucinations, insomnia, nightmares, crying spells, discomfort in public, memory loss, paranoia, and irritability.  Id. at 45, 47, 48, 55, 764–66.  Plaintiff described her auditory hallucinations at the first hearing, claiming she has heard babies crying and various voices mocking her or telling her to harm herself.  Id. at 46–47.  Even while answering questions during the second hearing, Plaintiff expressed that she was hearing voices and getting confused.  Id. at 766.

Plaintiff testified about her anger management issues, sharing that she regularly has outbursts in public.  AR at 764.  Plaintiff also testified about her struggles with focus and memory loss, explaining at both hearings that she often forgets that she is cooking on the stove and leaves the gas on for extended periods of time.  Id. at 55, 767.  As a result, Plaintiff relies largely upon her mother to take her to the grocery store and her sister to cook for her; however, she has prepared meals for herself and used Uber or Lyft when her relatives are unavailable.  Id. at 54–55.

Plaintiff testified about her efforts to comply with treatment; she has participated in individual and group therapy sessions, both in person and virtually during the pandemic.  AR at 44, 762–63.  Plaintiff has relied upon her mother to manage appointments because her memory is unreliable.  Id. at 45.  Plaintiff testified that she was not compliant with her medication in early 2020—before her first hearing with an ALJ—because the medication made her sick and destroyed her appetite; however, at the first hearing, she assured the ALJ that she was "back on track" after adjusting to a new medication.  Id. at 46.  Plaintiff explained at the second hearing that her medications have improved her anxiety, mood, and sleep, but her impairment remained significant.  Id. at 763–64.

Plaintiff's testimony at the hearing was consistent with her reporting of her symptoms at various medical appointments noted throughout the medical record.  See AR at 328 (reporting right side leg pain); id. at 355–56 (reporting depression, suicidal thoughts, crying spells, mood swings, hallucinations, paranoia, and anger issues); id. at

388 (reporting auditory and visual hallucinations, paranoia, hopelessness, anxiety, depression, and irritability); id. at 413, 417 (same); id. at 535 (reporting depression, mood swings, anxiety, crying spells, and irritability); id. at 538 (reporting visual hallucinations and paranoia); id. at 543 (reporting visual hallucinations, depressed mood, and crying spells); id. at 545–46 (reporting suicidal thoughts and visual and auditory hallucinations); id. at 552 (reporting auditory hallucinations); id. at 977–78, 980–81 (reporting irritability and visual and auditory hallucinations); id. at 996 (reporting depression, crying spells, auditory hallucinations, and paranoia); id. at 1007, 1010 (reporting paranoia, delusions of people watching her, and auditory hallucinations of her baby crying and calling her name).

### b.    ALJ's decision

Both before and after summarizing Plaintiff's testimony and allegations, the ALJ used similar conclusory, boilerplate language to conclude Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms" are not consistent "with the medical evidence and other evidence in the record."  AR at 735. The ALJ otherwise failed to provide "specific, clear, and convincing reasons" for rejecting Plaintiff's complaints.

///
///
///
///
///
///
///
///
///
///
///

2.    **Applicable law**[5]

When a claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). "The ALJ must state specifically which symptom testimony is [discounted] and what facts in the record lead to that conclusion." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); see also Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) (holding "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her [RFC]").

"If the ALJ's . . . finding is supported by substantial evidence, [a court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, an ALJ's failure to give specific, clear, and convincing reasons to reject the claimant's testimony regarding the severity of the symptoms is not harmless, because it precludes the Court from conducting a meaningful review of the ALJ's reasoning. Brown-Hunter, 806 F.3d at 489. Moreover, as mentioned, a court must "review only

---

[5] Before the ALJ's decision, Social Security Ruling ("SSR") 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 678 n. 5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. SSR 16-3p's elimination of the word "credibility" from the Agency's subjective-symptom evaluation "does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony." Elizabeth B. v. Comm'r Soc. Sec., 2020 WL 1041498, at *3 (W.D. Wash. Mar. 4, 2020); see also R.P. v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016) (stating SSR 16-3p "implemented a change in dictation rather than substance").

the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." <u>Orn</u>, 495 F.3d at 630.  Courts, therefore, may not speculate as to the basis for unexplained conclusions but, rather, must consider only the reasoning given by the ALJ.  <u>See</u> <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts . . . [and] may not take a general finding . . . and comb the [AR] to find specific conflicts." (citation omitted)).

### 3.  Analysis

The ALJ explicitly cited only inconsistency with the medical evidence in rejecting Plaintiff's subjective complaints.  However, the Commissioner contends that the ALJ relied upon two additional reasons:  (1) Plaintiff's condition was treated effectively with medication; (2) Plaintiff had issues with compliance.  Dkt. 15 at 4.

As noted above, a court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." <u>Orn</u>, 495 F.3d at 630.  Courts, therefore, may not speculate as to the basis for unexplained conclusions but, rather, must consider only the reasoning given by the ALJ.  <u>See</u> <u>Burrell</u>, 775 F.3d at 1138.  Accordingly, although the Commissioner's purported reasons may be reasonable inferences from the ALJ's summary of the medical evidence, the Court may not speculate to or rely on these reasons where the ALJ did not explicitly provide them.  Furthermore, "[t]he ALJ must state specifically which symptom testimony is [discounted] and what facts in the record lead to that conclusion." <u>Smolen</u>, 80 F.3d at 1288; <u>see also</u> <u>Brown-Hunter</u>, 806 F.3d at 489.  Although courts do not require "ideal clarity" in ALJ decisions, the Agency's path must be reasonably discerned.  <u>See</u> <u>Brown-Hunter</u>, 806 F.3d at 492.

Here, the ALJ did not indicate with sufficient clarity that the reasons below were dispositive in discounting Plaintiff's testimony.  <u>See</u> <u>Lambert</u>, 980 F.3d at 1277; <u>Brown-Hunter</u>, 806 F.3d at 494 (assessment of subjective complaints insufficient when ALJ "simply state[s] her non-credibility conclusion and then summarize[s] the

1  medical evidence").  Even assuming the ALJ did reject Plaintiff's testimony in part

2  due to these reasons, none constitute "specific, clear, and convincing reasons" for

3  rejecting Plaintiff's subjective complaints of impairment.

### a.  Effectiveness of treatment

5  Generally, "[i]mpairments that can be controlled effectively with medication are

6  not disabling."  Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1006

7  (9th Cir. 2006).  However, an ALJ's reasoning that is otherwise valid is erroneous if it

8  is based on a mischaracterization of the record or Plaintiff's testimony.  See Garrison

9  v. Colvin, 759 F.3d 995, 1015–16 (9th Cir. 2014) (holding that ALJ erred by

10  mischaracterizing plaintiff testimony); see also Ellen G. v. Saul, 404 F. Supp. 3d 1261,

11  1267 (C.D. Cal. 2019) (rejecting ALJ's reasoning because it relied upon a

12  mischaracterization of the record).

13  As noted above, this Court may "review only the reasons provided by the ALJ

14  in the disability determination and may not affirm the ALJ on a ground upon which

15  [s]he did not rely."  Orn, 495 F.3d at 630.  Here, as mentioned, the ALJ did not

16  specifically state Plaintiff's effective treatment with medication as a reason for her

17  decision; rather, the ALJ merely cited to Plaintiff's self-reported positive responses to

18  treatment within her summary of the medical record.  See AR at 734–40.  However,

19  even construing the ALJ's citations to Plaintiff's favorable responses to treatment as

20  reasoning that Plaintiff's symptoms are effectively managed with medication, none of

21  the cited examples are clear or convincing because the ALJ mischaracterized the

22  record and failed to construe Plaintiff's response to treatment within the context of

23  the unique treatment expectations involving individuals afflicted by severe mental

24  illness.

25  The Commissioner asserts that Plaintiff's conditions were effectively controlled

26  by medication; however, as noted above, their reasoning relies only upon Plaintiff's

27  self-reported evaluations of her mental state as she testified feeling "a lot better" with

28  psychiatric medications.  AR at 735; Dkt. 15 at 4.  The Ninth Circuit has noted that

1   "'[i]ndividuals with chronic psychotic disorders commonly have their lives structured

2   in such a way as to minimize stress and reduce their signs and symptoms. Such

3   individuals may be much more impaired for work than their signs and symptoms

4   would indicate.'" Garrison, 759 F.3d at 1017 n. 22 (quoting Hutsell v. Massanari, 259

5   F.3d 707, 711 (8th Cir. 2001)). See also Holohan v. Massanari, 246 F.3d 1195, 1205

6   (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and

7   depression makes some improvement does not mean that the person's impairments

8   no longer seriously affect her ability to function in a workplace.").

9       Furthermore, an ALJ may not cherry pick isolated instances of improvement to

10   refute a long-standing disability. Garrison, 759 F.3d 995 at 1017 ("Cycles of

11   improvement and debilitating symptoms are a common occurrence, and in such

12   circumstances it is error for an ALJ to pick out a few isolated instances of

13   improvement over a period of months or years and to treat them as a basis for

14   concluding a claimant is capable of working."). This is particularly true amongst

15   patients suffering from severe mental illnesses, which notoriously produce symptoms

16   that wax and wane. See Indiana v. Edwards, 554 U.S. 164, 175 (2008) ("Mental illness

17   itself is not a unitary concept. It varies in degree. It can vary over time. It interferes

18   with an individual's functioning at different times in different ways."). The ALJ must

19   evaluate the "overall diagnostic picture" of the medical record, recognizing that an

20   individual's testimony of some improvement—particularly regarding mental illness

21   symptoms—does not automatically indicate that the claimant's limitations have

22   sufficiently dissipated to make her fit for work. See Holohan, 246 F.3d at 1205.

23       Here, when considering the totality of the medical record, it appears as though

24   Plaintiff's condition has been unstable since 2018, with Plaintiff regularly experiencing

25   symptoms of severe depression, psychosis, anxiety, PTSD, and irritability despite

26   deviations in treatment compliance. AR at 735–39, 995. The Commissioner cited

27   isolated instances of improvement with medication, but failed consider these instances

28   in the context of the documented cyclical nature of Plaintiff's impairments.

1   Furthermore, the ALJ simultaneously referenced Plaintiff's frequent non-compliance

2   with treatment, which could be read to contradict Commissioner's inference that

3   Plaintiff's conditions were effectively regulated with medication.  AR at 735, 736, 738.

4   Indeed, even when Plaintiff reported compliance with her treatment plan, she

5   continued to report and exhibit symptoms of paranoia and auditory hallucinations.

6   AR at 995.

7          Ultimately, the ALJ never explicitly relied upon evidence of Plaintiff's medically

8   controlled condition, and even assuming she had, the ALJ based that judgment upon

9   a mischaracterization of the record, citing only Plaintiff's own occasional self-reports

10   of improvement without providing further context.  Accordingly, that Plaintiff's

11   impairments were purportedly "effectively controlled" with medication is not a clear

12   and convincing reason here.

13              **b.       Issues with compliance**

14          To the extent that the ALJ relied upon Plaintiff's failure to comply with her

15   prescribed medications to reject Plaintiff's symptom testimony, the ALJ erred by

16   drawing an adverse inference from any alleged failure to pursue consistent treatment

17   "without first considering any explanations that the individual may provide, or other

18   information in the case record, that may explain infrequent or irregular medical visits

19   or failure to comply with medical treatment."  See Garcia v. Saul, 2020 WL 10934910,

20   at *6 (C.D. Cal. Mar. 9, 2020) (quoting Tonapetyan v. Halter, 242 F.3d 1144, 1149

21   (9th Cir. 2001)); see also Gamble v. Chater, 68 F.3d 319, 321 (9th Cir.1995) (holding

22   benefits may not be denied because of a claimant's inability to obtain treatment due to

23   lack of funds or insurance); Orn, 495 F.3d at 638 (holding failure to seek treatment

24   may not be a primary basis for an adverse credibility finding).  Without more

25   explanation or consideration of Plaintiff's unique limitations, the ALJ's mere citation

26   to deviations from prescribed treatment is not specific, clear, or convincing.

27          The current evidence of mental health treatment is limited, as is often the case

28   with social security applicants who suffer from mental health impairments and

economic disadvantages. <u>Regennitter v. Comm'r of Soc. Sec. Admin.</u>, 166 F.3d 1294, 1297 n.1, 1298 (9th Cir. 1999) (finding the ALJ erred by rejecting treating source opinion where plaintiff failed to seek further treatment due to poverty and noting it is "a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation"). <u>See</u> Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *8 ("We will not find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."); <u>Surman v. Comm'r Soc. Sec. Admin.</u>, 2018 WL 3491667, at *6 (C.D. Cal. July 19, 2018) (ALJ erred by discounting claimant's subjective allegations in part because ALJ never explicitly cited claimant's explanation that his insurance did not cover psychological treatment, counseling, or therapy). However, as discussed above, the record here is more robust than many—Plaintiff's symptoms are documented throughout the relevant period. <u>See</u> AR at 328, 355–56, 388, 413, 417, 535, 538, 543, 545–46, 552, 977–78, 980–81, 996, 1007, 1010.

The ALJ implies two (2) non-compliance issues without directly citing either as reasons for rejecting Plaintiff's testimony: (1) Plaintiff's lack of follow up appointments for her gunshot wound, and (2) Plaintiff running out of medications and missing follow up appointments with mental health examiners. AR at 735–36. The ALJ is permitted to consider "unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment" in evaluating symptom testimony. <u>Molina</u>, 674 F.3d at 1112. However, the ALJ must first consider any alternative explanations for noncompliance. <u>See</u> <u>Garcia</u>, 2020 WL 10934910, at *6. Here, the ALJ failed to consider or inquire further about why Plaintiff could not pursue consistent treatment, making it improper to fault Plaintiff for failing to properly comply with her medication.

For example, the record clearly shows Plaintiff struggled with homelessness, impacting her compliance with treatment plans and causing her to miss psychiatry

appointments, medication doses, and medication refills.  See AR at 357 (Plaintiff expressed at a mental health appointment that she was homeless and struggling with medication compliance); id. at 373 (Plaintiff remained homeless and expressed her inability to afford security deposits; Plaintiff also requested a two-month supply of medication due to her financial struggles); id. at 376 (Plaintiff was extremely emotional about missing her mental health appointment because she had to move out of her apartment immediately and take care of her grandson who was in the middle of a custody dispute); id. at 379 (Plaintiff expressed that her homelessness made it difficult to keep up with appointments and refill/keep up with her medication); id. at 388 (Plaintiff expressed her continuous struggle with homelessness).

Despite the myriad of evidence of Plaintiff's homelessness, the ALJ only references Plaintiff's homelessness in a single sentence while summarizing the medical record, failing to consider the significant ways in which homelessness could have inhibited Plaintiff's ability to comply with medical treatment.  AR at 736.  Despite her struggles with homelessness, even while Plaintiff sometimes missed appointments and failed to refill or take her medication, Plaintiff did not deny or resist treatment.  Rather, she continuously expressed her desire and intent to be compliant with her medication, repeatedly seeking treatment by requesting refills of her medications.  AR at 363, 356, 379.  Notably, Plaintiff showed a shift toward improved compliance when she acquired stable housing.  See AR at 538 (Plaintiff reported compliance with medication as she hoped to move into a new home with her daughter).

In addition to Plaintiff's struggle with homelessness, the ALJ failed to consider how Plaintiff's mental illness presented obstacles to consistent compliance with treatment.  In contrast to physical disabilities, the very nature of a mental disability disrupts an individual's judgment, cognition, and self-discipline.  See Miranda W. v. Saul, 509 F. Supp. 3d 1270, 1282 (D. Or. 2020) (finding Plaintiff's severe mental illness manifested as non-compliance symptoms, specifically the inability to track and reliably take several medications).  Here, Plaintiff's depression, bipolar disorder, and

PTSD often manifested in the form of memory loss symptoms, concentration issues, and inconsistency with her treatment.

Ultimately, given that Plaintiff experienced homelessness and that her mental illness produced symptoms that might have interfered with Plaintiff's ability to follow a consistent medication regiment, it was improper for the ALJ to rely on Plaintiff's lack of compliance with medication to reject Plaintiff's testimony without considering how Plaintiff's economic disadvantage and mental impairments might have impacted her ability to consistently comply.

### c.   Lack of objective medical support

An ALJ may not discredit testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722 (citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991)). See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (lack of objective medical evidence to support subjective symptom allegations cannot form the sole basis for discounting pain testimony); Rollins v. Massanari, 261 F.3d 853, 856–57 (9th Cir. 2001); Dschaak v. Astrue, 2011 WL 4498835, at *1 (D. Or. Sept. 27, 2011) ("[O]nce the[] other bases for the ALJ's decision were discarded as erroneous, the ALJ's [adverse subjective testimony] determination could not rely solely on conflicts with the medical evidence."). However, while inconsistency with objective medical evidence cannot be the sole basis for rejecting symptom testimony, the ALJ may consider it as a factor. Burch, 400 F.3d at 681. Still, the ALJ must "identify what testimony is not credible and what evidence undermines [the plaintiff's] complaints." Reddick, 157 F.3d at 722 (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

Here, the ALJ explicitly cited only the inconsistency between the objective medical evidence and Plaintiff's testimony. AR at 735. Because the ALJ did not clearly provide any other specific, clear, and convincing reasons to reject Plaintiff's subjective complaints, inconsistency with the objective medical evidence, alone, cannot form the basis for discounting Plaintiff's subjective testimony about her

symptoms. See Burch, 400 F.3d at 681. Therefore, even if the ALJ fairly summarized the medical record, the ALJ's conclusion that Plaintiff's subjective complaints were inconsistent with the objective medical record findings does not constitute a "specific, clear, and convincing reason" for rejecting Plaintiff's testimony.

However, the ALJ did not fairly summarize the record. The ALJ based her conclusion that Plaintiff's subjective testimony was inconsistent with the medical record on an incomplete assessment of Plaintiff's medical history. As noted above, the medical record corroborates Plaintiff's testimony, as medical professionals have continuously observed and treated Plaintiff for many of the symptoms Plaintiff complained of. See AR at 357 (medical progress notes reporting Plaintiff's depression, crying spells, mood swings, irritability, hallucinations, and paranoia); id. at 373 (same); id. at 379 (same); id. at 384 (medical progress notes reporting Plaintiff's extreme depression and hopelessness exacerbated by her homelessness); id. at 388 (medical progress notes reporting Plaintiff's depression, crying spells, mood swings, irritability, visual hallucinations, and paranoia); id. at 410 (same); id. at 413 (same); id. at 417 (same); id. at 538 (same); id. at 543 (same); id. at 546 (medical progress notes indicating Plaintiff's possible suicidal ideation and poor judgment); id. at 552–53 (medical progress notes reporting Plaintiff's auditory hallucinations); id. at 559 (medical progress notes reporting Plaintiff's auditory and visual hallucinations and poor judgment); id. at 563–65 (medical progress notes reporting Plaintiff's suicidal ideation, irritability, and poor insight and judgment); id. at 972 (medical progress notes observing Plaintiff's extreme irritability and anger); id. at 995 (medical progress notes reporting Plaintiff's depressive mood); id. at 1010 (medical progress notes reporting Plaintiff's auditory hallucinations and impaired judgement, memory, concentration, and insight).

As noted above, an ALJ may not cherry pick isolated instances of improvement to refute a long-standing disability. Garrison, 759 F.3d 995 at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such

18

circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Here, the record illustrates Plaintiff's relentless struggle with severe mental impairments; it was therefore improper to reject Plaintiff's testimony merely because it was inconsistent with some, but not all, of the medical evidence.

### 4.  Harmlessness

Finally, the ALJ's error in rejecting Plaintiff's subjective complaints is not harmless. A decision of the ALJ will not be reversed for harmless errors. <u>Stout v. Comm'r of Soc. Sec. Admin.</u>, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing <u>Burch</u>, 400 F.3d at 679). However, a reviewing court cannot consider an error harmless "unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." <u>Stout</u>, 454 F.3d at 1056. In other words, legal errors are harmless only if they are inconsequential to the non-disability ruling. <u>Id.</u> at 1055.

Here, the ALJ's opinion that Plaintiff was not disabled necessarily relied on the ALJ's rejection of Plaintiff's allegations regarding the limiting effect of her impairments, including Plaintiff's testimony about her extreme mental disabilities inhibiting her compliance with treatment, its effectiveness, and her ability to hold a consistent job. Therefore, the Court cannot find the ALJ's improper analysis of Plaintiff's subjective complaints harmless error. <u>See</u> <u>Brown-Hunter</u>, 806 F.3d at 492–93 (ALJ's failure adequately to specify reasons for discounting claimant testimony "will usually not be harmless").

### VIII.
### <u>RELIEF</u>

### A.  APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" <u>Hill</u>, 698 F.3d at 1162 (citation omitted). "We may

exercise our discretion and direct an award of benefits 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.'" Id. (citation omitted).  "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id.; see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that [c]laimant is entitled to benefits.").

**B.    ANALYSIS**

Here, remand for further proceedings is warranted.  The ALJ's assessment of the hearing testimony is intertwined with other issues raised in the Plaintiff's and Defendant's Briefs, including the consideration of medical evidence and ultimately the fashioning of the RFC.  Because it is unclear, considering these issues, whether Plaintiff is in fact disabled, remand here is on an "open record."  See Brown-Hunter, 806 F.3d at 495; Bunnell v. Barnhart, 336 F.3d 1112, 1115–16 (9th Cir. 2003).  The parties may freely take up all issues raised in parties' briefs and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

///

///

///

///

///

///

///

///

///

///

## IX.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this action for further proceedings consistent with this Order.  **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.


Dated:  July 25, 2023

_____

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge